UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEITH A. KENT,

                Plaintiff,

        -vs-                                         08-CV-414-JTC

GLADYS M. DROUGHT, et al.,

                Defendants.

---

Defendants Drought, Stymus, and Leo have moved, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the complaint on the grounds that plaintiff has failed to state a claim against them and an order, pursuant to Rule 56, granting defendants summary judgment on their counterclaim (Item 16). Plaintiff opposes the motion and asserts that this court lacks jurisdiction to determine defendants' counterclaim (Item 23). Defendants have also filed a motion seeking to sever plaintiff's action against them from that of defendant Cardone (Item 33).

**BACKGROUND and FACTS**

This action was originally commenced in New York State Supreme Court, Orleans County, and was removed to this court on June 4, 2008 (Item 1). In his complaint, plaintiff alleges that he is a logger and that he and defendant Gladys Drought entered into an agreement by which plaintiff agreed to log 79 designated trees on her property, in addition to an unspecified number of culled trees to be logged, at plaintiff's discretion (Item 1, Exh. F, ¶ 7). Under the contract, plaintiff was to pay defendant Drought $11,000.00 for the designated trees, and plaintiff would pay defendant an additional sum for the culled trees

based on timber volume. *Id.,* ¶¶ 8-9. In his complaint, plaintiff estimated that the additional payment to defendant would be approximately $4,000.00 to $6,000.00. *Id.,* ¶ 10. Plaintiff gave defendant Drought a check in the amount of $1,000.00 as a down payment. *Id.,* ¶ 11.

On February 2, 2006, plaintiff started to cut the trees in accordance with the contract and remove the culled trees (Item 1, Exh. F, ¶¶ 15–16). On February 20, 2006, defendant Stymus, Drought's brother, while carrying a gun, approached plaintiff while he was working on Drought's property. He accused plaintiff of being a thief and said that he wanted to have an expert determine the value of the trees. *Id.,* ¶¶ 17-18. Plaintiff agreed not to dispose of the cut trees so that a representative of defendants could evaluate them. *Id.,* ¶ 19. Plaintiff continued to work on the property and kept the cut trees for a period of two weeks so that defendants Drought, Stymus, and Leo, Drought's daughter, could have the cut trees evaluated. After two weeks, in which no one came to evaluate the trees, plaintiff sold the logs. *Id.,* ¶¶ 20-21.

On February 25, 2006, defendant Leo contacted the New York State Police and filed a complaint against plaintiff, alleging that plaintiff unfairly convinced defendant Drought to sign a contract with him. Defendant Leo requested that charges be brought against plaintiff for larceny of the trees which were cut beyond the 79 trees specified in the contract (Item 1, Exh. F, ¶¶ 22-23). Plaintiff further alleges that on May 23, 2006, at the instigation of defendants Drought, Leo, and Stymus, plaintiff was arrested by Investigator Michael Notto of the New York State Police and charged with the crimes of grand larceny in the third degree, unlawful removal of protected plants, and trespass. He was taken to the

State Police barracks, where he was detained for about 1 ½ hours. He was then taken to court, where he was arraigned and released on his own recognizance. Plaintiff states that his arrest, brought about at the request and instigation of defendants Drought, Leo, and Stymus, was without probable cause. *Id.,* ¶¶ 25-28.

Plaintiff also alleges that defendant Cardone, District Attorney of Orleans County, threatened to indict plaintiff if he did not pay defendant Drought the money that she and defendants Leo and Stymus sought (Item 1, Exh. F, ¶ 30). When plaintiff refused to pay, defendant Cardone presented several charges against plaintiff to the grand jury, including grand larceny in the third degree, criminal possession of stolen property, tampering with physical evidence, and removal of trees in violation of the Environmental Conservation Law. *Id.,* ¶ 34. Plaintiff alleges that in April of 2007, the grand jury refused to indict plaintiff on most of the charges, except for the charge of tampering with evidence. That charge was dismissed later by County Court Judge Punch in August of 2007. *Id.,* ¶¶ 38-39.

Plaintiff has alleged three causes of action against defendants Drought, Stymus, and Leo–false arrest (first through third causes of action), malicious prosecution (fourth cause of action), and, with defendant Cardone, conspiracy to violate plaintiff's civil rights (seventh cause of action). Specifically, he alleges that defendant Drought gave a supporting deposition to the police, in which she falsely alleged that plaintiff stole trees from her property (Item 1, Exh. F, ¶ 45). He states that defendant Leo contacted the New York State Police and requested that they "go after" plaintiff, as there was no civil recourse against him. *Id.,* ¶¶ 65-66. He also alleges that defendant Stymus gave a false supporting deposition which led to plaintiff's arrest. *Id.,* ¶¶ 74-76. As to the conspiracy, plaintiff alleges that defendants Drought, Stymus, Leo, and Cardone attempted to coerce plaintiff

3

to pay monies he did not owe, and conspired to have him arrested and charged when he refused to pay. *Id.,* ¶ 143.

Defendants Drought, Stymus, and Leo filed an answer to the complaint on July 16, 2008 (Item 5).[1] At that time, they interposed a counterclaim alleging that plaintiff had added the language regarding the culled trees after Drought had signed the contract. They further alleged that plaintiff cut 198 trees on plaintiff's property, well in excess of the 79 trees originally designated. Defendants obtained an appraisal of the cut timber and noted that plaintiff had paid only the $1,000 down payment. *Id.,* ¶¶ 14 - 22. Accordingly, they sought a judgment in the amount of $21,726.00.

This motion to dismiss and for summary judgment was filed on December 29, 2009 (Item 16). Plaintiff filed a response to the motion on March 8, 2010 and cross-moved to dismiss the counterclaim for lack of jurisdiction (Item 23). Defendants did not file a response to the cross motion, nor did they file a reply in support of their motion to dismiss and motion for summary judgment. Instead, on May 4, 2010, defendants filed a motion seeking to sever the action against them from the action against defendant Cardone and seeking an order remanding the matters alleged against the Drought defendants back to state court (Item 33). On June 7, 2010, defendant Cardone filed a response in opposition to the motion (Item 34). The court determined that oral argument was not necessary. For the reasons that follow, the defendants' motion to dismiss the complaint is denied, the

---

[1] On June 10, 2008, in lieu of an answer, defendants Cardone and the County of Orleans filed a motion to dismiss (Item 2). In a Decision and Order filed February 18, 2010, the court granted the motion as to the County of Orleans, but denied the motion as to defendant Cardone (Item 21). Cardone's appeal of that order is pending.

4

defendants' motion for summary judgment on the counterclaim is denied, plaintiff's motion to dismiss the counterclaim is denied, and the defendants' motion to sever is denied.

**DISCUSSION**

**1. Standard on Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' . . . will not do." *Id.* (quoting *Twombly,* 550 U.S. at 555); *see also In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

To survive a Rule 12(b) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotations omitted); *see Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (interpreting *Twombly* to require a "plausibility standard" that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible") (emphasis omitted), *rev'd on other*

5

*grounds*, 129 S.Ct. 1937 (2009). On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), *cert. denied,* ___U.S.___, 129 S.Ct. 1524 (2009). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

**2. False Arrest**

Under New York law, to prevail on a false arrest claim, a plaintiff must show (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Broughton v. State*, 335 N.E.2d 310 (N.Y. 1975). The quintessential defense to false arrest is the presence of probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (noting that the existence of probable cause "is a complete defense to an action for false arrest")).

A civilian complainant will generally not be liable for false arrest/false imprisonment merely for seeking the assistance of or furnishing information to law enforcement authorities, who are then free to exercise their own judgment concerning whether an arrest should be made and criminal charges filed. *See Lowmack v. Eckerd Corp.,* 757 N.Y.S.2d

6

406, 407-08 (App. Div. 2003); *Chapo v. Premier Liq. Corp.,* 688 N.Y.S.2d 342 (App. Div. 1999); *Cobb v Willis*, 617 N.Y.S.2d 601 (App. Div. 1994).

> To sustain a cause of action for false arrest and false imprisonment [against a civilian complainant], a plaintiff must show that the defendant took an active role in the [arrest] of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff.

*Celnick v Freitag*, 662 N.Y.S.2d 37, 39 (App. Div. 1997) (internal cites omitted). Thus, "[o]ne who instigates, causes or directs an arrest without a warrant is liable if it results in false imprisonment because no crime has been committed or the person arrested is innocent . . . ." *Lowmack*, 757 N.Y.S.2d at 408 (quoting 59 N.Y.Jur. 2d, False Imprisonment and Malicious Prosecution § 36 (2010)).

In *Lowmack,* plaintiff was arrested and briefly detained by police officers based on allegations by employees of defendant Eckerd Corporation that plaintiff had robbed one of Eckerd's stores. Plaintiff was later released after the officers viewed a store surveillance tape and determined that plaintiff was not the perpetrator. The Appellate Division, Fourth Department, reversed a grant of summary judgment for Eckerd, finding "a triable issue of fact concerning whether plaintiff's arrest was instigated or procured by employees of Eckerd with the intent that plaintiff be confined." *Lowmack,* 757 N.Y.S.2d at 408; *see also Brown v. Nassau County,* 760 N.Y.S.2d 655 (App. Div. 2003) (civilian complainant can be liable for false arrest and malicious prosecution if she intentionally provided false evidence to the police resulting in the plaintiff's arrest and prosecution). Here, plaintiff has alleged that defendants Drought, Stymus, and Leo instigated the arrest of plaintiff by contacting the New York State Police, falsely reporting that plaintiff had stolen timber from Drought's

7

property, and providing supporting affidavits to that effect.  Plaintiff has sufficiently alleged that the defendants intended that he be confined, that he was conscious of and did not consent to the confinement, and that the confinement was not otherwise privileged. Accordingly, plaintiff has alleged sufficient factual matter to state a false arrest claim that is plausible on its face, and the motion to dismiss the false arrest claims is denied.

3. **Malicious Prosecution**

False arrest and malicious prosecution are kindred actions. *Broughton v. State*, 335 N.E.2d 310 (N.Y.1975).  Whether based upon federal or state law, the elements for malicious prosecution are the same. *Gauthier v. Town of Bethlehem,* 1993 WL 489684, at *5 (N.D.N.Y. November 24, 1993) (citations omitted).  To state a cause of action for malicious prosecution, a plaintiff must adequately allege:  (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff"s favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (internal quotation marks omitted), *cert. denied,* 522 U.S. 1115 (1998).

As with false arrest, a civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities, is generally not liable for malicious prosecution. *See Du Chateau v. Metro-North Commuter R.R. Co.*, 688 N.Y.S.2d 12, 15 (App. Div.1999); *Celnick v Freitag*, 662 N.Y.S.2d at 39.  However, a complainant may be liable if he "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Viza v. Town of Greece,* 463 N.Y.S.2d 970, 972 (App. Div. 1983), *app. dismissed,* 64 N.Y.2d 776 (1985); *see also*

*Brown v. Nassau County,* 760 N.Y.S.2d 655 (App. Div. 2003) (civilian complainant can be liable for false arrest and malicious prosecution if she intentionally provided false evidence to the police resulting in the plaintiff's arrest and prosecution).  Here, plaintiff has alleged that defendants knowingly made false statements to authorities which led directly to his arrest and the presentation of charges to the grand jury.  He has alleged that his arrest was without probable cause, that the proceedings terminated in his favor, and that the defendants acted with malice.  Plaintiff has adequately pled a plausible malicious prosecution claim, and the motion to dismiss is denied.

### 4. Conspiracy to Violate Civil Rights

In his seventh cause of action, plaintiff essentially restates his false arrest/malicious prosecution claims and alleges that defendants Drought, Stymus, and Leo conspired with defendant Cardone to deprive him of constitutional rights.  Specifically, plaintiff alleges that the defendants had plaintiff "charged with crimes he did not commit, without probable cause and with malice," (Item 1, Exh. F, ¶ 141) and "conspired to deprive [him] of property, namely, money."  *Id.,* ¶ 142.

In *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995), the Second Circuit, in discussing a conspiracy claim raised under section 1983, stated that while substantive claims under section 1983 are normally brought only against state officials, "a § 1983 claim may be proved by showing that a person acting under color of state law . . . collaborated or conspired with a private person . . . to deprive the plaintiff of a constitutional right . . . ." *Singer,* 63 F.3d at 119 (quoting *Fries v. Barnes*, 618 F.2d 988, 990 (2d Cir. 1980)); *see also American Broadcasting Cos. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977) ("an

ordinary citizen who conspires with a state agent to violate the civil rights of a plaintiff is equally liable . . . "). To state such a claim, plaintiff "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy are not sufficient. *Ciambriello*, 292 F.3d at 325; *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983"). Moreover, it is well-settled that although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, . . . the pleadings must present facts tending to show agreement and concerted action.*" McIntyre v. Longwood Cent. Sch. Dist.*, 2008 WL 850263, at *11 (E.D.N.Y. March 27, 2008) (internal quotation marks and citations omitted), *aff'd,* 2010 WL 2222469 (2d Cir. June 4, 2010). Additionally, the plaintiff must allege that he suffered the violation of a constitutional right. *Singer,* 63 F.3d at 119.

Here, plaintiff has alleged that all the defendants conspired "to violate Plaintiff's civil rights by having Plaintiff charged with crimes he did not commit, without probable cause and with malice . . ." (Item 1, Exh. F, ¶ 141). He admits that he does not know the exact number of meetings or telephone calls between and among the defendants, but alleges that, on one occasion, Cardone stated in open court "that he had to talk to the family of Defendant Drought with regard to their demand for money." *Id.,* ¶ 144. Accordingly, plaintiff has alleged an overt act in furtherance of the civil conspiracy. Additionally, he has

alleged a constitutional violation–his false arrest and malicious prosecution in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *Id.,* ¶ 136. Plaintiff has pled a plausible claim for civil conspiracy, and the motion to dismiss is denied.

**5. Motion to Dismiss Defendants' Counterclaim**

Plaintiff moves to strike the counterclaim on the basis that this court lacks subject matter jurisdiction over the claim. Alternatively, he seeks an order severing the counterclaim from the case and remanding it to state court. However, as the court has original jurisdiction over plaintiff's federal conspiracy claim, it also has supplemental jurisdiction over the counterclaim pursuant to 28 U.S.C. § 1367 because the claims are so related that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A state and federal claim are considered part of the same "case or controversy" under section 1367 if they "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725 (1966); *accord City of Chicago v. International College of Surgeons*, 522 U.S. 156, 165 (1997).

Plaintiff's federal law claim and the defendants' counterclaim "derive from a common nucleus of operative fact" because they arise from the same events and concern the same parties: both concern the contract for timber between plaintiff and defendant Drought, the scope of that contract, the rights of the parties under the contract, and the ramifications of the actions of both plaintiff and the defendants in light of the contract. *See, e.g., Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d. Cir. 2004) (finding that credit discrimination

claim and state-law debt-collection counterclaims met the "common nucleus" test of *Gibbs* because both "originate from the Plaintiffs' decisions to purchase Ford cars."); *Maxwell v. New York University,* 2008 WL 5435327, *2 (S.D.N.Y. December 31, 2008) (ADA claim and breach of contract counterclaim derive from common nucleus of operative fact as both concern payment for educational expenses). Moreover, this court's resolution of plaintiff's claim may bear upon the merits of the counterclaim. If defendants prevail by establishing probable cause for plaintiff's arrest and prosecution, it will certainly affect plaintiff's liability on the contract.

Additionally, the counterclaim, a simple breach of contract claim, does not raise a novel or complex issue of state law. Nor does it "substantially predominate" over the federal law claim. There are no "exceptional circumstances" or "compelling reasons" to decline supplemental jurisdiction over the counterclaim pursuant to subsection 1367(d). Finally, exercise of supplemental jurisdiction over the counterclaim comports with the "considerations of judicial economy, convenience and fairness to litigants" upon which section 1367 is based. *Gibbs,* 383 U.S. at 726. With plaintiff's federal law claim before the court, it is more efficient to concurrently determine the merits of the counterclaim, as well as the other state law claims. Accordingly, plaintiff's motion to strike the counterclaim is denied.

**6. Motion for Summary Judgment**

Defendants Drought, Leo, and Stymus have moved for summary judgment on their counterclaim. They argue that plaintiff cut more trees than the number for which he originally contracted and added language to the contract that gave him permission to cut

additional trees and to pay only pallet and/or wood fuel value for this timber.  Defendants also allege that plaintiff failed to pay defendant Drought for the timber beyond the initial payment of $1,000.00.  They allege that they obtained a valuation of the cut timber, and they seek a judgment in the amount of $21,726.00.

Plaintiff opposes the motion and argues that numerous factual issues preclude summary judgment.  Plaintiff argues that he attempted to pay defendant Drought $10,000 for the trees that he logged, but that she refused his check.  It is plaintiff's position that defendants have thus waived their right to payment.  Plaintiff also argues that the cut timber has not been accurately valued.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary "judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-moving party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2); *accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587; *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811, (2003).

13

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

The court has reviewed the record, scant as it is, in the case thus far. On this record, it cannot be said that defendants are entitled to judgment as a matter of law. Defendants have alleged that plaintiff added language to the contract after it was signed by Defendant Drought, apparently allowing the logging of culled trees. Plaintiff disputes this assertion. Defendants have also obtained a valuation of the trees based on the number of stumps. Plaintiff disputes the number and the value of the trees he logged. This motion cannot be determined from the papers at this time. Accordingly, defendants' motion for summary judgment on their counterclaim is denied.

**7. Motion of Defendants Drought, Stymus, Leo to Sever**

Defendants Drought, Stymus, and Leo have moved to sever the action against them from plaintiff's action against Cardone and ask the court to remand the severed action back to state court. Defendant Cardone has filed a response in opposition to the motion. Plaintiff does not oppose the motion.

Rule 21 provides that the court may "add or drop a party" or "sever any claim against a party." Fed.R.Civ.P. 21. While "[t]he decision whether to grant a severance motion is

committed to the sound discretion of the trial court," *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988), "the Federal courts view severance as a 'procedural device to be employed only in exceptional circumstances.'" *Wausau Bus. Ins. Co. v. Turner Constr. Co.,* 2001 WL 963943, *1 (S.D.N.Y. August 23, 2001) (quoting *Forbes ex rel. Marisol A. v. Guiliani,* 929 F.Supp. 662, 693 (S.D.N.Y. 1996). In deciding whether severance is appropriate, courts generally consider: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Morris v. Northrop Grumman Corp.,* 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

Plaintiff has alleged three causes of action against the Drought defendants–false arrest, malicious prosecution, and a federal cause of action for civil conspiracy to violate constitutional rights with defendant Cardone. The Drought defendants' counterclaim is a state law contract claim, but this court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367. The matter was removed to this court, with defendants' consent, based on the federal cause of action.

The Drought defendants concede that the claims involve common questions of fact, that common questions of law exist regarding the conspiracy claim, that there may be some overlap of evidence and/or witnesses, and that many of the same witness would be called in separate cases (Item 33, Memorandum, p. 7). While severance of the claims against the Drought defendants, including the counterclaim, may facilitate disposition of

those claims, were the court to sever the parties, plaintiff would be compelled to try the conspiracy claim in two different courts. The same witnesses and proof would be required in both actions, and thus judicial economy would not be served. It would be an abuse of discretion to sever the parties to this action where there is a conspiracy claim involving all parties. *See In re High Fructose Corn Syrup Antitrust Litig.,* 293 F.Supp.2d 854, 863 (C.D.Ill. 2003) (severance improper in civil conspiracy case). Accordingly, the motion to sever is denied.

## CONCLUSION

The motion of defendants Drought, Stymus, and Leo to dismiss the complaint is denied. The motion for summary judgment on the defendants' counterclaim is denied. The plaintiff's cross-motion to dismiss the counterclaim is denied. The motion to sever the plaintiff's action against defendants Drought, Stymus, and Leo and remand that action to state court is denied. The parties shall participate in a meeting with the court on Thursday, November 18, 2010 at 2:00 p.m., at which time a further schedule will be determined.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:  October 28  , 2010
p:\opinions\08-414.oct62010